UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR No.: 07-124-07T |
| | ) | |
| SAFFIYAH ABDULLAH | ) | |

**DEFENDANT'S MOTION FOR A SENTENCE BELOW THE APPLICABLE SENTENCING GUIDELINES RANGE**

The Defendant, SAFFIYAH ABDULLAH, by and through her undersigned counsel, pursuant to 18 U.S.C. § 3553 and LR Cr 32 of the Local Rules of the United States District Court for the District of Rhode Island, hereby moves the Court to impose a sentence below the applicable sentencing guidelines range. In support thereof, the Defendant has filed contemporaneously herewith a supporting memorandum.

Respectfully submitted this 21st day of March, 2008.

SAFFIYAH ABDULLAH, Defendant
By her Counsel,

/s/ Charles A. Tamuleviz .

Charles A. Tamuleviz Bar No.: 6115
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940
E-Mail: cat@thbrilaw.com

CERTIFICATION

On this 21st day of March 2008, I caused the Defendant's Motion For A Sentence Below The Applicable Sentencing Guidelines Range to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification:

Sandra R. Beckner
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

/s/ Charles A. Tamuleviz
Charles A. Tamuleviz, Esquire
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940
E-mail: cat@thbrilaw.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR No.: 07-124-07T |
| | ) | |
| SAFFIYAH ABDULLAH | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF HER MOTION FOR A SENTENCE BELOW THE APPLICABLE SENTENCING GUIDELINES RANGE**

## I. INTRODUCTION

The Defendant, SAFFIYAH ABDULLAH, by and through her undersigned counsel, hereby submits the instant Memorandum in Support of her Motion For A Sentence Below The Applicable Sentencing Guidelines Range and in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of sentencing, as required by 18 U.S.C. § 3553(a), in light of United States v. Booker, 543 U.S. 220 (2005).

Booker restored the district court's ability to fashion a sentence tailored to the individual circumstances of a particular case and defendant by requiring courts to consider factors in addition to the sentencing range prescribed by the United States Sentencing Guidelines. Indeed, pursuant to 18 U.S.C. § 3553(a) the court is required to impose a sentence below the applicable range if such a sentence is sufficient to achieve the sentencing purposes set forth in 18 U.S.C. § 3553(a)(2). Essentially, the sentencing purposes in § 3553(a)(2) are the following: punishment; deterrence; protection of the

public; appropriate correctional treatment for the defendant; avoid unwarranted sentence disparities among similarly situated defendants; and provide restitution to victims.

In the instant case, Ms. Abdullah respectfully requests that the Court consider several important mitigating factors in fashioning an appropriate sentence, including but not limited to the following. First, the difficult circumstances of Ms. Abdullah's life, including an unfortunate history of substance abuse and being a victim of domestic violence. Second, the disproportionate nature of the sentence calculated under the Sentencing Guidelines when compared to the circumstances of Ms. Abdullah's involvement in the instant offense. Third, the sentences imposed on Ms. Abdullah's co-defendants. When considered individually, collectively, and in the unique circumstances of this case, the aforementioned mitigating factors merit a sentence significantly below the low end of the applicable sentencing guidelines range.

## II. BACKGROUND

On September 26, 2007, a federal grand jury in the District of Rhode Island returned the Indictment in the instant case. Count I of the Indictment charges the Defendant, Saffiyah Abdullah, and six other individuals with conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349. The Indictment also includes 25 counts of bank fraud, in violation of 18 U.S.C. §§ 1344 and 2. Ms. Abdullah is only charged in one of the substantive bank fraud counts, i.e., Count XXV. On October 2, 2007, Ms. Abdullah, was arrested by federal agents. On that same day, Ms. Abdullah appeared before United States Magistrate Judge David L. Martin for arraignment. Magistrate Judge Martin ordered Ms. Abdullah released on a $25,000 unsecured bond, with certain conditions of release. On December 13, 2007, pursuant to a written plea agreement, Ms. Abdullah

pleaded guilty to the two counts in the Indictment in which she was charged, i.e., Counts I and XXV.

A Presentence Investigation Report ("PSR") was prepared by the United States Probation Office and made available to Ms. Abdullah and her counsel on February 25, 2008. In the PSR, Ms. Abdullah's Total Offense Level is computed to be 13. Her Criminal History is computed to be Category II. Based upon the foregoing Total Offense Level and Criminal History Category, the applicable guidelines sentencing range is calculated to be 15 to 21 months. However, Ms. Abdullah has filed an Objection to the PSR, in which she challenges the computation of her Criminal History Category. If Ms. Abdullah's Objection is upheld, her corrected Criminal History Category would be I, with a corresponding guidelines sentencing range of 12 to 18 months. Ms. Abdullah is scheduled to be sentenced on April 1, 2008.

III. POST *BOOKER* SENTENCING

Sentencing proceedings should begin with a calculation of the applicable sentencing guidelines range. Gall v. United States, 128 S.Ct. 586, 596 (2007), citing Rita v. United States, 127 S.Ct. 2456, 2480 (2007). The sentencing guidelines function as a starting point and initial benchmark for the Court, however they are not the only consideration. Id. After both parties are afforded an opportunity to argue for whatever sentence they deem appropriate, the Court should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. Id. The Court may not presume that the guidelines range is reasonable, but must make an individualized assessment based on the facts presented. Gall v. United States, 128 S.Ct. at 597. The sentence imposed by the district court is subject to review under an abuse of

discretion standard, including the substantive reasonableness of the sentence. Gall v. United States, 128 S.Ct. at 597.

IV. STATUTORY SENTENCING FACTORS

A. The History and Characteristics of the Defendant, 18 U.S.C. § 3553(a)(1)

Information concerning Ms. Abdullah's personal and family characteristics is set forth in detail in Part C of the PSR. Of significance, at approximately seven years of age Ms. Abdullah was raised by her mother in a single parent household. Ms. Abdullah's father was a substance abuser. Consequently, at a young age Ms. Abdullah became responsible for many aspects of home life for herself and her siblings, e.g., cooking, cleaning, babysitting, etc. After Ms. Abdullah's mother remarried, Ms. Abdullah was physically abused by her step-father. Ms. Abdullah's mother was also abused by the step-father.

Unfortunately, Ms. Abdullah was further victimized by domestic violence when she was attacked by a boyfriend in 2005. During the attack Ms. Abdullah was struck with a 25 pound weight, stomped on her face, stabbed with a screw driver, sliced on her finger and had hair on her pulled out. Thankfully, Ms. Abdullah does not have any residual physical impairments from the attack. However, the emotional trauma of such a horrific episode cannot be ignored.

Ms. Abdullah's mother died in 2002 at the age of 44 from breast cancer. For the five months preceding her mother's passing, Ms. Abdullah was her mother's caregiver. The death of her mother had a significant effect on Ms. Abdullah and was very difficult for her to deal with. Due to her mother's history and her own medical condition, as set forth in the PSR, Ms. Abdullah has been advised to undergo annual mammograms, which

is unusual for a woman of her age. One effect of her medical situation is that it is a constant reminder to Ms. Abdullah of her mother's battle against breast cancer and the difficult memories associated with that time in her life.

As set forth in the PSR at paragraph no. 42, Ms. Abdullah is currently undergoing mental health treatment for depression. Significantly, Ms. Abdullah's depression predates the instant case. Although her present legal situation has exacerbated her mental health condition, the underlying causes appear to include her mother's death, housing issues, lack of employment, and her medical condition. Ms. Abdullah's depressive symptoms have had a negative effect on her functioning and her ability to participate in activities of daily living. In order to assess her culpability in the instant offense, Ms. Abdullah's conduct should be viewed in the context of her mental health condition.

B. The Nature and Circumstances of the Offense, 18 U.S.C. § 3553(a)(1)

The offenses to which Ms. Abdullah pleaded guilty, although serious, are not crimes of violence or narcotics offenses, rather they are economic crimes. As it relates to the instant offenses, Ms. Abdullah's conduct consisted of the following: (1) Giving John Perras a place to live in the apartment she shared with her brother, which necessarily provided him with access to the contents of the apartment, including Ms. Abdullah's computer; (2) Introducing Karen Lynch to John Perras; and (3) Depositing a counterfeit check into her personal bank account. The foregoing conduct did not occur in a vacuum, but must be viewed in the light of the surrounding circumstances.

At the time Mr. Perras was offered the opportunity to stay with Ms. Abdullah and her brother, Mr. Perras had just recently been released from prison and was in need of housing. The offer to stay at the apartment made to Mr. Perras was not an invitation to

utilize a computer to print counterfeit checks. To the contrary, it was a charitable offer to a friend who needed a place to stay. Further, Mr. Perras was not allowed access only to the computer, he was given access to all the contents of the apartment. He was not offered the computer with instructions to commit a crime. Additionally, there is absolutely no evidence that when Mr. Perras moved into the apartment he immediately announced that he was going to use the computer to print counterfeit checks. Common sense dictates that Mr. Perras initially kept his intentions to himself. Ms. Abdullah acknowledges that at a later point in time she became aware of Mr. Perras' activities. However, it is important to recognize that her knowledge of the criminal nature of Mr. Perras' conduct was not coextensive with him moving into the apartment.

Ms. Abdullah did introduce Karen Lynch to John Perras. Subsequently, Ms. Lynch cashed counterfeit checks for Mr. Perras. During that introduction there was discussion of Ms. Lynch cashing checks for Mr. Perras. However, there is no evidence offered by the government that Ms. Abdullah was aware at the time of the introduction of the scope of the check cashing activities or the scope of Ms. Lynch's intended future undertakings. Further, there is no evidence offered by the government that Ms. Abdullah was involved with Ms. Lynch in cashing any of the checks. Indeed, if she had been, one would expect the government would have charged her with additional counts related to those checks.

On one occasion, Ms. Abdullah did deposit a counterfeit check from Mr. Perras into her personal bank account, knowing the check was counterfeit. The depository institution did not honor the check. Consequently, Ms. Abdullah did not obtain any money from that event. Indeed, despite the economic nature of the instant offenses there

is not any evidence that Ms. Abdullah received one cent, or profited in any way, from the subject conspiracy. Of all the defendants in this case, Ms. Abdullah is the only one who did not receive an economic benefit.

C. The Need for the Sentence Imposed, 18 U.S.C. § 3553(a)(2)

A necessary factor to be considered by the Court in sentencing Ms. Abdullah is punishment. Ms. Abdullah has accepted responsibility for her conduct and the seriousness of what she did. The government's sentencing memorandum suggests a term of incarceration is appropriate, in part, because Ms. Abdullah does not appreciate the gravity of the situation. In support thereof the government points to positive urine screens, missed counseling sessions, and failing to maintain stable employment. The underlying facts put the government's contentions into context. First, the positive urine screens occurred on the day of her arrest and shortly thereafter. Subsequently, all tests have been negative. The foregoing does not evidence a failure by Ms. Abdullah to appreciate the seriousness of her situation, but rather is the predictable consequence of an individual entering the criminal justice system with a substance abuse problem.

As set forth in the PSR, Ms. Abdullah has missed two counseling appointments, which is regrettable. However, it should be noted that it was Ms. Abdullah who initially raised the issue of obtaining counseling, not the Court. She recognized her need for treatment and affirmatively acted to address that situation. Such action evidences a sense of responsibility, not a lackadaisical attitude.

Finally, the government criticizes Ms. Abdullah for not maintaining stable employment. The foregoing criticism ignores the realities of Ms. Abdullah's situation. She was not employed at the time of her arrest. Nevertheless, Ms. Abdullah was able to

obtain some temporary employment positions. Given that Ms. Abdullah has been on pretrial release during this time, her obtaining temporary employment positions, and the negative economic situation existing in the state, to argue that a failure to maintain stable employment equates with a failure to appreciate the gravity of her situation is unsupportable.

In its Sentencing Memorandum, the government attempts to argue that Ms. Abdullah's statement that she did not consider the underlying conduct to be a "big deal" is indicative of the need for a sentence that includes a period of incarceration. The foregoing statement needs to be put into context. When approached by law enforcement, Ms. Abdullah voluntarily, and without the advice of counsel, consented to an interview, gave a written statement, and consented to a search of her apartment. According to the agent's interview report, after being told of the amount of money involved, Ms. Abdullah told the agent that she was "shocked" to find out how much money Mr. Perras had obtained from the check cashing scheme. In her written statement to the government, Ms. Abdullah states that she was "... not aware of the magnitude of the amount of checks or cash ..." involved in the scheme. Thus, when considered in light of her knowledge of Mr. Perras' activities Ms. Abdullah's statement about "no big deal" is not as nefarious as the government urges and does not support the government's sentencing recommendation.

There is no measurable gain or objective to be attained by a sentence that includes an extended period of incarceration for Ms. Abdullah. A sentence of one day incarceration followed by a period of supervised release would more than adequately

punish Ms. Abdullah. This is especially so in light of the significant restrictive conditions that are concomitant with serving a term of supervised release.

Another factor that enters into the sentencing equation is deterrence of others and the defendant. Deterrence of Ms. Abdullah has been accomplished. She appreciates the seriousness of her situation and has accepted responsibility for her actions. Given the nature of the instant offenses, i.e., economic, the potential difference in deterrence between a sentence of incarceration as recommended by the government versus the sentence sought by Ms. Abdullah is minimal, if anything. Thus, a sentence of one day incarceration with a subsequent period of supervised release would be more than sufficient to accomplish the goal of deterrence.

D. Unwarranted Sentence Disparities, 18 U.S.C. § 3553(a)(6)

Section 3553(a)(6) requires courts to consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. The First Circuit Court of Appeals has recognized that the sentence disparity analysis includes consideration of disparities between co-defendants. United States v. Vazquez-Rivera, 470 F.3d 443, 449 (2006). As of the date of the filing of this Memorandum, three of Ms. Abdullah's co-defendants have been sentenced in the instant case. Mr. Perras was sentenced to a term of incarceration of 51 months. However, as the leader of the charged conspiracy and someone with an extensive criminal history, he is not similarly situated to Ms. Abdullah. Thus, his sentence is of no value under a § 3553(a)(6) analysis.

Co-defendant David Chavez was sentenced to eight months incarceration. Co-defendant Karen Lynch received a sentence of four months incarceration and four months

home confinement. Although distinctions can be drawn between the two foregoing co-defendants and Ms. Abdullah, their sentences should be considered when fashioning an appropriate sentence for her. Mr. Chavez' role in the instant scheme was indispensable. He provided account information that he purloined from his employer, Citizens Bank, to Mr. Perras. Without the information from Mr. Chavez, the scheme would have been significantly impaired. Also, Mr. Chavez was paid by Mr. Perras for the account information. Ms. Lynch cashed multiple checks for Mr. Perras and she received approximately $7,000 for her efforts. Ms. Abdullah's affirmative conduct in the instant conspiracy was qualitatively and quantitatively less than both Mr. Chavez and Ms. Lynch. As such, the government's recommended sentence of 12 months would create an unwarranted disparity between co-defendants, contrary to the purpose of § 3553(a)(6).

V. <u>CONCLUSION</u>

In consideration of the foregoing, the Defendant, SAFFIYAH ABDULLAH, respectfully requests that the Court impose a sentence of imprisonment of one day followed by a term of supervised release of three years, a proportional amount of restitution, and no fine.

Respectfully submitted this 21st day of March, 2008.

SAFFIYAH ABDULLAH, Defendant
By her Counsel,

/s/ Charles A. Tamuleviz

Charles A. Tamuleviz Bar No.: 6115
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940
E-Mail: cat@thbrilaw.com

CERTIFICATION

On this 21st day of March 2008, I caused the Defendant's Memorandum In Support Of Her Motion For A Sentence Below The Applicable Sentencing Guidelines Range to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification:

Sandra R. Beckner
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, Rhode Island 02903

/s/ Charles A. Tamuleviz
Charles A. Tamuleviz, Esquire
Tamuleviz, Hultquist, & Bianchi, LLP
144 Westminster Street, Suite 302
Providence, Rhode Island 02903
Telephone: 401.490.2939
Facsimile: 401.490.2940
E-mail: cat@thbrilaw.com